VERNE E. ROBY et al., d/b/a Roby Insurance Agency, Plaintiffs-Appellees, v. DECATUR STEEL ERECTORS, INCORPORATED, Defendant-Appellant.

Fourth District   No. 14595

Opinion filed April 14, 1978.—Rehearing denied June 7, 1978.

Lawrence E. Johnson & Associates, of Champaign, for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (John E. Fick, of counsel), for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

We deal here with a suit to recover on an insurance contract that was tried to the bench.

Unfortunately, a vastly detailed narrative of the facts is necessary to fathom this appeal.

It began in December or January, 1972-73, when Ivan Perry and John Birch formed the defendant corporation, Decatur Steel Erectors, Inc. The two incorporators consulted with James Smith, one of the partners of the Roby Insurance Agency, concerning both workmen's compensation insurance and comprehensive liability coverage for their new business. Smith said that he could not write the desired coverage but that he could place the insurance through Ben Ritter of the Davis Insurance Agency, Inc. This eventually was the course of action taken and an application form, bearing Ritter's signature, was duly submitted to the Aetna Insurance Company. The application form designated the kind of operations to be "iron or steel erection in the construction of dwellings not exceeding two stories in height" and stated that the premium code basis was Number 5069. The subsequent policy that was issued to Decatur Steel Erectors, Inc., by Aetna carried this same descriptive language and code number.

(It would be politic to pause here to explain the practice within the insurance industry for the fixing of premium rates for workmen's comp and liability coverage in the hazardous business of construction. The insurance industry compiles and maintains a "manual" that sets forth a schedule of classifications for various types of industrial construction and work, including the general area of "steel erection." That category is then broken down into different kinds of steel erection work (two-story dwellings, multistory dwellings, commercial or business categories, tanks, etc.) and each of the various types of subcategories carry a different classification code. The premium to be charged for workmen's comp and comprehensive liability is computed through the use of a formula and one element of this formula is a rate (of so much per $100 of coverage) which is established by the industry and followed as a standard rate for the particular type of operations being insured. The type of operations, of course, by reference to the manual, gives the code number which in turn establishes the rate. This rate, then, is multiplied by the estimated annual payroll, resulting in an estimated premium. However, since the payroll is a variable factor, an inspection and audit of the insured's books are required and adjustments are then made thereafter, resulting in either an additional premium or a possible refund. Therefore, once we have found the rate from checking the manual using the description of the steel erection work to be covered, we have the formula: RATE X ESTIMATED PAYROLL = ESTIMATED PREMIUM + AUDIT = ACTUAL PREMIUM.

Both of the incorporators of Decatur Steel were aware that the amount of estimated payroll submitted determined the amount of the initial deposit premium and they asked that the amount of estimated payroll stated on the application ($80,000) be reduced (to $36,000) so that they would not have to advance such a large first year premium for their new business. They authorized such reduction, which was duly made and which sliced their deposit premium in half. (As a matter of fact, the annual payroll subsequently turned out to be just about $80,000.) The policies were duly issued in accordance with this change of estimated payroll, showed the classification rate as 7.36 and were delivered by the Roby Insurance Agency to Decatur Steel Erectors.

Along in December 1973, Ritter (Davis Insurance) inquired if the insurance would be renewed for a second policy year, and he was advised by Smith (Roby Insurance) that Decatur Steel desired continued coverage. Policies for the second year, commencing January 10, 1974, were then issued by Aetna and delivered to Decatur Steel. The nature of the work, the code number and the required payroll estimate all stayed the same in the reissued policy, and the rate was fixed at 8.27 for the workmen's comp coverage.

Sometime after the policies were reissued effective January 10, 1974, Perry severed his relationship with Decatur Steel. And in February, Aetna sent its auditor, Dale Burger, to audit the books of Decatur Steel pursuant to the policy. The result of the audit showed that Decatur Steel owed Aetna an earned premium due of over $11,000, the difference being a change in two factors: not only did the audit reflect that the actual payroll was around $80,000 instead of the estimate of $36,000, but Aetna asserted that a different steel erection code with a 14.80 rate should have been used instead of the 7.36 rate as charged. After learning of this result, Ritter (Davis Insurance) negotiated with Aetna and obtained a compromise. Aetna agreed to reduce the amount of the workmen's comp premium for $11,000 to $5,946, by keeping the old 7.36 code rate instead of the 14.80 rate. Following this concession obtained by Ritter (Davis Insurance), a letter was written to Decatur Steel by Smith (Roby Insurance) dated July 2, 1974, explaining the change in the code. Two weeks later, Smith (Roby Insurance) contacted Birch (Decatur Steel), explained the audit result, and Mrs. Birch then wrote a check for $5,731 and delivered it to Smith. However, Birch afterwards thought better of it and stopped payment.

In another couple of weeks, Ritter (Davis Ins.) and Smith (Roby Ins.) consulted again with Birch (Decatur Steel) who then paid them $2,508, being the amount that the audit showed was due on the liability policy at the corrected code rate (with credit for a $715 cash deposit). As to the workmen's compensation, however, there was discussion about whether

or not some of the payroll classified by Aetna should have been supervisory and consequently subject to a lower rate.

The policy was cancelled on October 10, 1974, and this action was commenced in March of 1975. Defendant counterclaimed against Smith for fraudulent, wilful and intentional misrepresentation, and has filed a cross-appeal.

Capacious and comprehensive evidence (455 pages of testimony and 220 exhibits) went before the trial judge sitting at bench. Two auditors for Aetna testified in detail as to how the second year policy audit was made and how the figures were arrived at. In summary, their testimony reflected that the earned premium for workmen's comp (January 10— October 10, 1974) was $6,532, and subtracting the deposit premium of $3,027, a final balance of $3,505 was due. As to the liability coverage, there was an earned premium of $1,305, a deposit credit of $752, leaving an owed balance of $563. According to their testimony, Decatur Steel owed Aetna for the second year coverage of both workmen's comp and liability a bottom line figure of $4,068.

(It should be noted at this juncture that Birch and Perry (Decatur Steel) signed a note on February 25, 1974, in the amount of $3,399.55 assigned (with recourse) by Ritter to the Millikin National Bank. Decatur Steel stopped making payments on the note after August of 1974, thus leaving an unpaid balance of $1,545.50.)

The trial judge then entered a final judgment order as follows:

| | |
|---|---|
| 1st yr. workmen's comp | $3,220.00 |
| 2nd yr. workmen's comp | 3,505.00 |
| 2nd yr. liability | 563.00 |
| Note | 1,545.50 |
| Total Judgment | $8,833.50 |

Decatur Steel urges that there are 11 issues presented on appeal, but the Roby and Davis Insurance Agencies contend there is only one issue: whether or not the decision of the trial court sitting in bench is supported by a preponderance of the evidence. They are both wrong.

The simplest one first. Decatur Steel really does not contest or argue its liability on the note given to the Millikin National Bank. Its purpose was to obtain funds to pay the insurance premium, and that portion of the judgment ($1,545.50) is obviously a valid debt owed by Decatur Steel to Roby and Davis Insurance Agencies, since the bank, under its recourse rights, proceeded against the plaintiffs after default. Accordingly, so much of the judgment as pertains to the recovery on this note is affirmed.

The plaintiff insurance agencies commenced and tried the proceeding

at bar on a contract theory. And the contract here, of course, is the insurance policy. At issue under this policy-contract is not so much the payroll increases, but goes primarily to rate changes. Plaintiffs-appellees argue that the rates could be changed by Aetna at any time to reflect the variables within the insurance industry in this area, and that such was customary and common usage and practice throughout the insurance community.

Frankly, we are at a total loss to grasp plaintiffs'-appellees' position in this regard. On the second page of the policy-contract, under the heading of "Conditions" is recited the following:

> "1. PREMIUM—The *premium bases and rates* for the classifications of operations described in the declarations *are as stated therein* and for classifications not so described are those applicable in accordance with the manuals in use by the Company. This policy is issued by the Company and accepted by the Insured with the agreement that if any change in classifications, rates or rating plans is or becomes applicable to this policy under any law regulating this insurance or because of any amendments affecting the benefits provided by the workmen's compensation law, *such change with the effective date thereof shall be stated in an endorsement issued to form a part of this policy.*" (Emphasis ours.)

The policy expressly spells out the "premium bases and rates" applicable to the coverage. And the record before us clearly shows that no change by endorsement was issued. Rates may be set in accordance with the manuals of Aetna, but *only* when the classifications are not stated in the policy. Page 1 of the policy before us clearly contains a recitation and description of the classifications pertinent to this case. And the lower rates are clearly reflected on the face of the policy. *Ergo*, no endorsement being issued, and since both the classification and the rate are reflected on the face of the policy, manual changes of the insurance company do not apply to this policy and the terms on its face govern.

Plaintiffs chose to proceed on the theory of contract and alleged in their second amended complaint that Decatur Steel purchased insurance from them. But Decatur Steel denied such purchase and answered that it engaged Smith (Roby Ins.) as its agent to obtain the required insurance. Indeed, on cross-examination, Smith admitted that he was acting as an agent for appellant corporation. On the other hand, plaintiffs made no effort to establish the scope of Smith's authority in the obtaining of insurance, and in particular, made no effort to establish Smith's authority to pay premiums to Aetna Insurance Company.

■■ We view this matter to be one essentially involving the question of *agency* (defendant's theory), and *not* one of *contract* (plaintiffs' position).

In insurance law it is generally accepted that an *agent* is one who represents a particular *insurer,* and a *broker* is one who represents an *insured* in the placing of insurance with a particular insurance company. (Ill. Rev. Stat. 1973, ch. 73, par. 1065.37.) As was stated in *Lynn v. Village of West City* (1976), 36 Ill. App. 3d 561, 565, 345 N.E.2d 172, 175, a four-pronged test has been developed to assist in determining exactly what interest a broker is representing: (1) Who set him in *motion* first? (2) Who could *control* his actions? (3) Who *pays* him? (4) Whose interest was he to *protect*? In applying this test to the case at bar, it appears quite clear that Smith (Roby Ins.) was contacted, directed and paid to protect the interests of Decatur Steel.

In *Galiher v. Spates* (1970), 129 Ill. App. 2d 204, 206-07, 262 N.E.2d 626, 628, this court said:

> "An insurance broker is one who procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, with the company selected by such broker. 22 ILP, Insurance, §71, at 102. Insurance agents have a fixed and permanent relation to the companies they represent and have certain duties and allegiances to such companies. Whether a person is an agent or a broker is determined by his acts or what he does. Tri-City Transp. Co. v. Bituminous Cas. Corp., 311 Ill. App. 610, 37 N.E.2d 441 (4th Dist. 1941). While generally the question of whether an insurance broker is the agent of the insured or insurer is one of fact, where the evidence shows clearly he is the agent of the insured, it becomes a matter of law."

■■ It would furthermore seem from the cases that a broker is a special agent with authority to obtain or procure a policy of insurance and deliver it to the insured, and it has been held that any actions after delivery of the policy are beyond the scope or perimeter of the agent's authority and are, consequently, not binding on the principal insured, unless ratified. *Holbrook v. Institutional Insurance Co. of America* (7th Cir. 1966), 369 F.2d 236; *Kenney v. Rochester German Insurance Co.* (1908), 141 Ill. App. 543; 16 Appleman, Insurance Law & Practice §87.23 (1968).

■■ We conclude that Smith (Roby Ins.) was a broker for, and a special agent of, the insured (Decatur Steel) and that Ritter (Davis Ins.) was a subagent. That being the case—and we believe it is—it is difficult indeed for us to see how Decatur Steel can be liable to Roby where that agent, after delivery of the policy, and without ratification, has paid a disputed claim on behalf of its principal, the defendant, without authority. We

have combed this record and there appears to be no evidence whatever that the plaintiffs were given authority to pay the alleged additional premiums based primarily on the disputed increased rates.

In view of our finding, all other points and issues raised by plaintiffs are rendered moot. As to Decatur Steel's cross-appeal, we have reviewed the record and find that it contains insufficient evidence to sustain cross-appellant's burden of proof of fraudulent, wilful and intentional misrepresentation. No judgment below to such effect could ever stand.

Those portions of the trial court's judgment (1) in favor of the plaintiffs and against the defendant on the note with recourse to the Millikin National Bank, in the amount of $1,545.50, and (2) in favor of the plaintiffs and against the defendant on the counterclaim, are affirmed. In all other respects, the judgment of the lower court is reversed.

Affirmed in part and reversed in part.

REARDON, P. J., and TRAPP, J., concur.