ESTERGARD, EBERHARDT & ACKERMAN, INC., Plaintiff-Appellant, *v.*
GEORGE CARRAGHER, Defendant-Appellee.

Fourth District   No. 17356

Opinion filed April 21, 1982.

TRAPP, J., dissenting.

Francis J. Davis, of Maloney & Davis, of Urbana, for appellant.

James L. Capel, Jr., of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, of Champaign, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This appeal presents questions of agency law; specifically, the nature of the relationship of an insurance agent to an insurance broker and the scope of any duty growing out of that relation. In a suit over an uncollected, and presumably uncollectible, premium the circuit court of Champaign County in a trial held at bench found in favor of the

defendant, both as to the plaintiff's complaint and as to defendant's counterclaim. Plaintiff appeals and we affirm.

Plaintiff is a general insurance agency licensed to do business in this State; defendant is an insurance broker licensed to sell all types of insurance in this State. Over a period of about 15 years prior to the events in controversy here the parties had had a continuing business relationship. Defendant's business consisted principally of life, health and accident insurance which he generally placed through one particular carrier. When defendant obtained business which his usual carrier could not, or would not, underwrite, he placed the business with plaintiff, who would in turn place the risk with one of the companies represented by it. Plaintiff and defendant would then divide the commission. Plaintiff would bill defendant through his open brokerage account, and defendant generally would pay within 30 days. No written agreement to this effect was ever executed, but both parties were in agreement as to the relationships. Defendant dealt with the insureds and plaintiff dealt with the carriers.

In 1977 defendant placed with plaintiff the business of obtaining a worker's compensation and liability policy which was requested by one of his customers, East Central Mechanical Contractors, Inc. (East Central). Plaintiff placed the risk with one of the companies it represented, Indiana Group, Inc. (Indiana). Plaintiff's relationship with Indiana was spelled out in an agency agreement which was placed into evidence. The portion of that agreement which is pertinent to this appeal states as follows:

> "Agent shall be liable and fully responsible for payment of premiums to Company on all insurance and bonds (other than 'Company Collectible' renewal premiums), placed by or through Agent with Company including earned premiums on binders, whether or not such premiums are collected or collectible from insureds, provided however, that Agent is relieved of responsibility for any additional or renewal premiums for non-cancellable bonds, or developed by audit on any policy or bond subsequent to the termination of same, by waiving the commission thereon and sending written notice of such waiver to Company within 60 days from the billing date of such additional or renewal premiums, and in such event Company shall have the right to collect such premiums in any manner."

This provision is commonly referred to as the "relief clause" and we gather from the evidence in this case that it is a usual one in insurance agency contracts. Under its provisions, any additional or renewal premiums developed by audit after the termination of a policy may become the responsibility of the carrier, provided the agent waives his commission and gives timely notice.

The relief clause is the focal point of the instant case. East Central went out of business in December 1978, and the policy was not renewed. A final audit was made in April 1979, and a substantial sum was found due. In May 1979 East Central requested a review of the audit. However, defendant testified that he viewed this as a delaying tactic and felt that the premium generated by the audit would be uncollectible. He further testified that he informed plaintiff that collection would be a problem.

Two principal points are in dispute over the relief clause, and the evidence is in conflict over them: (1) whether defendant asked plaintiff to exercise the clause, and if so, when; and (2) whether plaintiff told defendant that the relief clause was a 30-day clause when in fact it was a 60-day clause.

It is not disputed that plaintiff paid the audited premium to Indiana in June 1979 and received its commission; and that it then billed defendant, who attempted to collect from East Central. In July 1979 defendant requested plaintiff to arrange a meeting among plaintiff, defendant, and the principals of East Central. This meeting was held in the latter part of that month, and it is not disputed that the East Central people explained that they could not pay the item and refused to sign a personal note in favor of defendant for the amount due.

The evidence then falls into conflict. Plaintiff's president testified that at the July 1979 meeting defendant for the first time asked him to invoke the relief clause. He also stated that he had not turned the matter back to Indiana because defendant had never notified him of the difficulty; further, that he was reluctant to involve Indiana because Indiana would take a "dim view" of the matter, but that he would have done so if requested by defendant.

Defendant's testimony was quite to the contrary. He stated that he told plaintiff in December 1978, when East Central went out of business, that there would be trouble collecting the audited premium; that he so informed plaintiff again after the April 1979 audit; that after the May 1979 review, he asked plaintiff to get Indiana involved; and that he made the statement to plaintiff again at the July 1979 meeting.

Defendant further testified that when he asked plaintiff in May 1979 to get Indiana involved, plaintiff's president told him that the relief clause was a 30-day clause and that the time had passed.

In September 1979 defendant made a payment to plaintiff in an effort to satisfy what he believed to be his obligation. This payment is the subject matter of his counterclaim. According to his testimony, it was after this payment was made that he discovered the 60-day provision of the relief clause.

Plaintiff's basic position is that relief clauses are a well-known provision of agency contracts and that defendant, as an experienced insurance man, should have been aware of it and requested its timely

exercise; since he did not, plaintiff should prevail. Defendant, on the other hand, while admitting knowledge of a relief clause, claims that plaintiff's president misrepresented it to him.

■■ In making its finding and entering judgment for the defendant, the trial court based its decision on a breach of the fiduciary duty which it found was owed by plaintiff to defendant. It found this duty in the long relationship which existed between the parties. While we agree with the trial court that a fiduciary duty existed and that it was breached, we do not believe that the duty found its origin in the general relationship of the parties, nor was its scope quite so broad. In our opinion plaintiff, upon accepting from defendant the placement of defendant's business, became the subagent of defendant and within the scope of the particular business, *i.e.*, the policy for East Central, owed the duty of loyalty and obedience to defendant. A part of this duty involved the invocation of the relief clause and the conflicting evidence on this matter was for the trial court to decide. (*William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 329 N.E.2d 458.) We discern no basis for upsetting its finding in favor of defendant on this matter. Therefore, a breach of the duty occurred and plaintiff may not recover.

In the realm of insurance the common law concepts of agency give way to specialized definitions because of the tripartite, or quadripartite, relationships of insurer, insured, and agent and/or broker. Section 490 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1065.37) is applicable:

"(a) 'Insurance agent' means an individual, firm, partnership, association or corporation appointed by an insurer to solicit, negotiate or bind coverages for or on applications or policies of insurance on its behalf, covering property or risks located in this State.

* * *

(b) 'Insurance broker' means an individual, firm, partnership, association or corporation, while not acting as a duly licensed insurance agent, who solicits, negotiates, procures, renews or continues a policy of insurance on behalf of insureds or prospective insureds other than himself." Ill. Rev. Stat. 1979, ch. 73, pars. 1065.37(a) and (b).

The definitions have been adopted in *Roby v. Decatur Steel Erectors, Inc.* (1978), 59 Ill. App. 3d 720, 375 N.E.2d 1355. (See also *Davidson v. Comet Casualty Co.* (1980), 89 Ill. App. 3d 720, 412 N.E.2d 19.) Under the evidence in the instant case, defendant was a broker and the agent for East Central, the insured; plaintiff was the agent of Indiana and the subagent of defendant. *Roby.*

■■ ■ The potential for conflict under the circumstances is patent. Plaintiff is at once the agent of Indiana and the subagent of defendant. It is elementary that any agent owes a duty of loyalty to his principal and the

relationship is one of trust and confidence. (1 Ill. L. & Prac. *Agency* §61 (1953).) Unless otherwise agreed, a subagent owes the agent the duties of an agent to his principal. (Restatement (Second) of Agency §428(2) (1958).) However, the crux of this case, the relief clause, in effect limits and defines the duty of plaintiff.

Invocation of the relief clause violates no duty which plaintiff owes either to Indiana or to defendant; it would be to the benefit of both plaintiff and defendant to avail themselves of the greater resources of the carrier in the collection of the audited premium. It is something which Indiana agreed to do, despite plaintiff's apprehension about its "dim view," and the evidence is plain that it is something upon which defendant was depending. The relief clause by its own terms applies to premiums placed "by or through" the agent. It is not limited to business generated by the agent himself. To fail to invoke the clause makes plaintiff derelict and to mislead defendant as to the time limitations is an outright breach of duty.

Plaintiff argues that, even admitting the existence of a duty, the evidence does not support any finding of its breach. We have already indicated that this is a factual matter for the trial court to resolve. *Aupperle.*

Plaintiff's final claim is that the trial court erred in finding for the defendant on his counterclaim and argues that the payment by defendant to plaintiff concedes that the lawsuit is based on rescission of contract principles and not on a breach of fiduciary duty. From this plaintiff further argues that defendant has not alleged nor proved any mistake of fact which would support an action for rescission. We disagree. The mistake of fact, *i.e.*, the time limitation of the relief clause, was directly attributable to the breach of fiduciary duty by the plaintiff.

■■ Money paid under the impression of the truth of a fact which is untrue may be recovered back, however careless the party paying may have been in omitting to use due diligence to inquire into the facts. (29 Ill. L. & Prac. *Payment* §56 (1957).) In *Board of Education v. Holt* (1976), 41 Ill. App. 3d 625, 354 N.E.2d 534, the plaintiff had paid the defendant for services not rendered and sought to recover the payment. The court held that if money has been paid under a mistake of fact and would not have been paid if the facts were known, it may be recovered. The fact that the payee is not guilty of deceit or unfairness does not prevent recovery, even if the payor were negligent.

■■ In the instant case we have already held that the evidence supports the finding that plaintiff misled defendant into thinking that the time for invoking the relief clause had expired. This mistake of fact, engendered by plaintiff, constitutes a basis for recovery of money mistakenly paid. It is irrelevant that defendant, as he testified, felt frustrated and believed

that there was no relief available to him. He expressly testified that he received no cooperation on the matter.

For all the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

GREEN, P. J., concurs.

JUSTICE TRAPP, dissenting:

I must dissent from the principal opinion in its conclusion that the transactions between plaintiff and defendant were such that the former became a fiduciary as a subagent for the latter, and that the failure to invoke the "relief clause" constituted a breach of a fiduciary duty.

It is agreed that by statutory definition defendant was a broker with the insured as his principal, and that by the same measure, plaintiff was an agent with the insuring company as its principal. The opinion points to the "potential for conflict" but without citation of authority transforms the plaintiff, an agent of the insurer, into a contemporaneous subagent of the defendant, a broker. Such result is fairly characterized as contrary to clearly defined dichotomy stated in section 490 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1065.37) as quoted in the principal opinion.

In *City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477, the issue was whether or not the city could constitutionally include an insurance broker within the generic class of "broker" for purposes of imposing a license requirement. In its rationale the court had occasion to consider the obligations and the powers of a "broker," both generically and in the field of insurance. The opinion noted that occasionally a broker is declared by statute, as presently in Illinois, to be an agent of the insurer for certain purposes. The opinion quoted dictionary statements that in limited instances a broker may be the agent of both parties in the execution of acts but only when the "bargain or contract has been definitely settled, * * *." One finds no comparable modification of the obligations and powers of an agent.

Having created a fiduciary relationship between the agent of the insurer and the broker, the majority opinion finds a duty of the agent to invoke the "relief clause" for the benefit of the broker, and concludes that because plaintiff failed to invoke such clause for such benefit he committed a breach of the fiduciary duty.

This result is rationalized only by saying that the agent's placing of the broker's application for a policy for the insured transforms the former into an agent or subagent of the broker. Such reasoning would require the conclusion that where an insurance agent, as statutorily defined, procures

an insurance policy for an applicant insured he thereupon becomes the agent of that insured. It is stated that this is a reasonable result for the reason that the insurer has provided for the "relief clause" in its contract with its agent and has agreed to relieve the agent. One finds no language in that contract as heretofore set out which suggests that there is any third-party beneficiary implication in the contract. It is apparent that as between plaintiff, an agent for the insurer, and defendant, a broker for the insured, the plaintiff would clearly violate the obligation of an agent to his principal in releasing any possible liability of the broker.

While there is conflicting testimony as to whether defendant advised plaintiff of the default or requested the exercise of the "relief clause," that question is of no relevance where there is an obvious conflict of interest in the respective representative capacities of the parties. I would hold that there is no duty in plaintiff to either invoke the clause or to accede to defendant's request to do so.

The trial court found that, as a matter of law, there was a breach of duty as a fiduciary which bars recovery by the plaintiff. This court affirms but chooses a different reason for imposing a fiduciary obligation. Thus, the record does not disclose whether or not other facts created any contractual obligations between these parties.

For these reasons, I would reverse the judgment of the trial court and remand for further proceedings.