AMERICAN ENVIRONMENTAL, INC., Plaintiff, v. 3-J COMPANY, Defendant and Third-Party Plaintiff-Appellant (Jeff Blackburn, Defendant; Insurance Brokers Service, Inc., Third-Party Defendant-Appellee).

Second District No. 2—90—1334

Opinion filed December 11, 1991.

BOWMAN, J., dissenting.

James E. O'Halloran, Jr., and Kirk L. Miller, both of O'Halloran, Kosoff & Miller, P.C., of Northbrook (Clifford G. Kossof, of counsel), for appellant.

Nick J. Digiovanni, Hugh C. Griffin, and Sandra K. Macauley, all of Lord, Bissell & Brook, and Raymond T. Reott, of Jenner & Block, both of Chicago (Sharon R. Patterson, of counsel), for appellee.

JUSTICE NICKELS delivered the opinion of the court:

This appeal is taken by 3-J Company (3-J) from the October 31, 1990, order of the circuit court of Du Page County which dismissed with prejudice 3-J's second amended third-party complaint (third-party

complaint) for breach of contract and breach of fiduciary duty against Insurance Brokers Service, Inc. (IBS). The underlying action was brought by American Environmental Construction, Inc. (American), the successor in interest to E & E Hauling, Inc. (E & E), against 3-J and Jeff Blackburn for fraud and negligent misrepresentation and breach of certain duties. For clarity purposes all references to American are synonymous with E & E. Although 3-J sets forth three issues, these can be summarized in one issue on appeal: whether 3-J's third-party complaint against IBS states a cause of action.

Based on relevant allegations in American's complaint against 3-J and Jeff Blackburn, American, a demolition company, had umbrella or excess liability insurance with Great American Surplus Lines Insurance Company (GASLIC). The insurance had been placed through Assurance Agency, Ltd., a division of 3-J. Blackburn was an insurance broker employed by Assurance. Under GASLIC endorsement No. 8, American was required to notify GASLIC prior to the beginning of any demolition project involving a structure in excess of 4 stories or 40 feet in height, whichever was less. GASLIC could decline coverage for the project.

Late in August 1986, American entered into a contract with Continental Illinois National Bank and Trust Company (Continental) for the demolition of two buildings exceeding the GASLIC height restrictions. The contract required American to provide written verification to Continental of American's excess liability insurance in the amount of $15 million. American asked 3-J to secure coverage verification from GASLIC as soon as possible. American sent written notification to GASLIC about the project on August 25, 1986. On August 28, 1986, American received a copy of a report sent by 3-J to the reinsurers under the GASLIC policy. The report described the project. (The report indicates a copy went to IBS.)

3-J continued to assure American that approval of insurance coverage could be expected in a matter of days. American told 3-J on September 3, 1986, that Continental required coverage verification by September 5, 1986. 3-J sent a letter to Continental on September 3, 1986, informing it that insurance coverage should be available by September 5, 1986. 3-J told American on September 4, 1986, that 3-J would probably not be able to complete the paper work in time. On September 5, 1986, Continental contacted 3-J and learned that GASLIC was not insuring the project and that 3-J was unable to secure sufficient alternate insurance coverage.

Later on September 5, 1986, 3-J told American that it could provide only $8 million in excess liability insurance for an additional pre-

mium of $200,000 over and above the premiums on the GASLIC policy. American began searching for alternate insurance coverage on September 5, 1986. 3-J informed American on September 8, 1986, that it had secured only $3 million in alternate coverage rather than $8 million. On September 11, 1986, 3-J admitted it could not secure alternate coverage, and American began searching on its own. Another insurance broker notified American that a $14 million umbrella liability policy (American earlier offered to provide the first $1 million as self-insurer) could be obtained for a $40,000 premium. When American contacted Continental it had already secured another demolition company for the project.

American's count IV alleged 3-J owed it a duty of good faith and fair dealing. This duty was breached by 3-J's conduct by not obtaining requested coverage; not informing American of the inadequacy of coverage; not promptly notifying American of 3-J's inability to obtain coverage and trying to force American to purchase additional insurance at rates substantially above market price. Breach of this duty proximately caused American economic loss, and American sought $2,500,000 in damages.

3-J filed the instant third-party complaint after two previous ones had been dismissed. It alleged that it did not normally solicit insurance quotations from excess liability insurers and IBS held itself out as a broker who could procure this insurance. A course of dealing was described whereby 3-J engaged IBS as its broker on prior occasions to procure insurance coverage. 3-J alleged that IBS and 3-J knew and understood certain things when IBS acted as 3-J's broker. These were: IBS would use its best efforts to obtain insurance quotations; to bind coverage as requested by 3-J; notify 3-J promptly if it could not obtain coverage; transmit notices to insurers from 3-J or 3-J's customers; and, if requested by 3-J, obtain timely replacement coverage. It was alleged that no written contract existed between 3-J and IBS.

It was alleged that when 3-J procured umbrella insurance coverage for American in 1985, it engaged IBS to obtain quotations. IBS transmitted a GASLIC quotation to 3-J, and 3-J transmitted it to American. When American accepted, 3-J transmitted the coverage request to IBS. IBS bound coverage with GASLIC and delivered the policy (for American) to 3-J. IBS was compensated. This procedure was followed for American's renewal of the GASLIC policy.

On August 20 or 21, 1986, 3-J telephoned IBS with information received from American about American's bid on the Continental project. 3-J informed IBS that the buildings exceeded the height restrictions in the policy and that work was beginning in 15 days. IBS re-

quested more information about the project for GASLIC. 3-J contacted American for the information. 3-J forwarded the information to IBS on August 27, 1986. Two days later (August 29, 1986), IBS told 3-J that GASLIC might not provide coverage for the project or might only cover it for an increased premium charge. 3-J asked IBS if excess liability coverage for the project could otherwise be obtained for American. IBS stated that it did not know where such coverage could be obtained. 3-J alleged that upon information and belief, IBS did not thereafter attempt to obtain coverage from any other insurer except GASLIC.

In count I, 3-J alleged that a contract existed between 3-J and IBS based on these allegations. It was alleged IBS breached the contract. In count II 3-J alleged that IBS was its agent based on these allegations and that IBS owed certain duties to 3-J. IBS breached these duties according to 3-J. 3-J alleged in both counts that if it was determined that it breached any obligation owed to American such breach was caused by IBS' failure to procure insurance for American in a timely manner. 3-J asked that a judgment be entered against IBS to the extent IBS' breach caused 3-J to be liable to American in the event a judgment for American was entered against 3-J.

The trial court dismissed with prejudice the (second amended) third-party complaint pursuant to IBS' section 2—615 motion. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) 3-J filed a timely notice of appeal.

Before considering the appeal on the merits, we find it necessary to address a number of points. 3-J's issues and arguments are based in part on its assumption that the trial court dismissed its third-party complaint for failure to allege sufficient facts to establish an agency relationship. It also claims that the trial court found as a matter of law that IBS was not 3-J's agent. However, there are no specific findings in the section 2—615 dismissal order, and the order may be sustained on any basis found in the record regardless of what led the trial court to its conclusion. (*Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776.) It is the judgment that is on appeal and not what else may have been said by the lower court. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382.) Thus, the issue on appeal is whether the third-party complaint was properly dismissed for failure to state a cause of action.

3-J used the same allegations to allege a contract existed between it and IBS in count I and an agency relationship in count II. From its argument on appeal, 3-J apparently intended to allege a contract of agency in count I. 3-J centers its arguments on the alleged breach of

fiduciary duties by IBS and has combined counts I and II for purposes of its arguments on appeal. Therefore, we consider only whether the third-party complaint stated a cause of action under either count based upon an alleged agency relationship or contract of agency between 3-J and IBS.

It is also noted that 3-J seeks recovery from IBS only to the extent that IBS' alleged actions relate to alternative insurance coverage for American for the Continental project. This position was taken by 3-J before the trial court and stated in its oral argument before this court. Furthermore, 3-J refers to all four counts of American's complaint against 3-J in its brief and argues that IBS is liable to 3-J as a subagent. In its response to IBS' motion to dismiss and at the hearing on the motion below, 3-J stated it sought recovery from IBS only to the extent 3-J was liable to American under count IV. A theory upon which a case is presented to the trial court cannot be changed on review, and an issue not represented to or considered by the trial court cannot be raised for the first time on appeal. (See *Cosentino v. Price* (1985), 136 Ill. App. 3d 490.) Therefore, we consider only American's count IV as it relates to 3-J's arguments.

Lastly, 3-J stated during oral argument before this court that its third-party complaint is not based on indemnity. It also referred to IBS' negligence. We have examined the third-party complaint and 3-J's arguments on appeal. 3-J's action against IBS involves implied indemnity based upon an alleged breach of fiduciary duties. See *People ex rel. Hartigan v. Community Hospital* (1989), 189 Ill. App. 3d 206.

In its brief 3-J claims that under the Restatement (Second) of Agency a subagent has a duty to indemnify the agent for conduct which is wrongful to the agent and for which the agent is liable to the principal. (Restatement (Second) of Agency §428 (1958).) 3-J argues that (implied) indemnity of IBS as a subagent would be consistent with *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, because *respondeat superior* is applicable. It refers to the fact that *Frazer* expressed no opinion of the viability of implied indemnity involving vicarious liability such as between a principal and an agent. (*Cf. American National Bank & Trust Co. v. Bransfield* (1991), 216 Ill. App. 3d 494 (it was determined that the Contribution Act superseded implied indemnity actions for vicarious liability of a principal for an agent).) Therefore, it believes it has a viable cause of action.

The problem with 3-J's argument is that *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, and earlier cases such as *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, have limited the scope of implied

*tort* liability indemnification. (*People ex rel. Hartigan,* 189 Ill. App. 3d at 216.) *Bransfield* concerns the tortious acts of an agent. These cases involve the effects of the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*) on implied indemnity. The Contribution Act concerns tort-feasors.

An action for breach of fiduciary duty is not a "tort" for purposes of the Contribution Act. (*People ex rel. Hartigan,* 189 Ill. App. 3d at 213; accord *Giordano v. Morgan* (1990), 197 Ill. App. 3d 543, 549.) One liable for breach of a fiduciary duty is not liable in tort, but such an action is controlled by the substantive laws of agency, contract and equity. (*Giordano,* 197 Ill. App. 3d at 549; see *Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437.) Nothing in the decisions which have limited the scope of implied tort liability indemnification has been held to eliminate the viability of implied nontort indemnification in this State. (*People ex rel. Hartigan,* 189 Ill. App. 3d at 216.) 3-J seeks implied indemnity based upon breach of fiduciary duty (and contract). The underlying action, American's count IV, concerns breach of fiduciary duty by 3-J. Therefore, *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, and the question of implied tort liability indemnification are not relevant to dismissal of the third-party complaint.

■ Turning to the issue on appeal, all facts properly pleaded in a complaint are accepted as true, and all reasonable inferences are drawn in favor of the nonmovant upon a motion to dismiss. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428.) The pleading of conclusions alone will not suffice for the factual allegations upon which a cause of action must be based. (*Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497.) If the complaint does not state a cause of action, that deficiency may not be cured by liberal construction or argument. (*Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281.) In determining the sufficiency of the dismissed complaint, we must apply the rule that no cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle a plaintiff to recover. (*Board of Education,* 131 Ill. 2d at 438; *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502; see *Miller v. DeWitt* (1967), 37 Ill. 2d 273.) While this broad statement is generally correct, it should not be construed as an adoption of notice pleading. (*Board of Education,* 131 Ill. 2d at 438.) The granting of a motion to dismiss is within the sound discretion of the trial court. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407.

Relying upon *Geocaris v. Bangs* (1968), 91 Ill. App. 2d 81, 3-J claims that a special rule exists in determining whether its third-party

complaint should have been dismissed. It asserts that the third-party complaint need only show a possibility of recovery and need not establish an absolute right to recovery. (*Geocaris*, 91 Ill. App. 2d at 87.) While this general statement of law is correct, we note that it is not reserved for third-party complaints. (See, *e.g., Carrillo v. Jam Productions, Ltd.* (1988), 173 Ill. App. 3d 693; *Thomas v. Zamberletti* (1985), 134 Ill. App. 3d 387.) Regardless of this fact, a third-party complaint will be dismissed if it fails to state a cause of action. (*Village of Crainville v. Argonaut Insurance Co.* (1980), 81 Ill. 2d 399; *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542.) Liberality of pleading will not relieve the necessity that a complaint (or third-party complaint) contain sufficient, factual averments and set out every fact essential to be proved. See *In re Beatty* (1987), 118 Ill. 2d 489.

3-J contends that it pleaded sufficient facts to allege a contract of agency existed between itself and IBS. Contrary to IBS' argument, 3-J points out that an agency relationship need not be based upon an express appointment and acceptance. (*Milwaukee Mutual Insurance Co. v. Wessels* (1983), 114 Ill. App. 3d 746.) According to 3-J the relationship may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts, and other relevant circumstances. (*Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167.) 3-J asserts that the existence and scope of an agency relationship are questions of fact for the trier of fact. (*Stefani*, 157 Ill. App. 3d at 171; *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21.) 3-J relies on *Estergard, Eberhardt & Ackerman, Inc. v. Carragher* (1982), 105 Ill. App. 3d 816, as a case which demonstrates that agency should not be determined as a matter of law. However, *Estergard* did not involve a motion to dismiss for failure to state a cause of action but was an appeal from a judgment following a bench trial.

Although 3-J relies on the principle that the existence and extent of an agency relationship may be established by circumstantial evidence, this principle does not free 3-J of its obligation to allege specific facts in support of its claim. (*H P I Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145.) 3-J must allege specific facts regarding the circumstances of the situation from which the existence of the (agency) relationship can be inferred. (*H P I Health Care Services, Inc.*, 131 Ill. 2d at 163; see *Enslen v. Village of Lombard* (1984), 128 Ill. App. 3d 531.) The existence of an agency relationship generally is a question of fact; however, the complaint must contain factual allegations of every fact which must be proved in order to be entitled to judgment on the complaint. (See *In re Beatty*, 118 Ill. 2d at 499.) A judgment cannot be rendered on facts demon-

strated by evidence at trial unless those facts shown were alleged in the complaint. *In re Beatty*, 118 Ill. 2d at 499.

3-J further posits that there is an interrelationship between its third-party complaint and American's complaint against 3-J. It claims that certain reasonable inferences can be drawn based on its allegations against IBS and American's allegations against 3-J. A copy of American's complaint was attached to the third-party complaint and "made a part" thereof as an exhibit. In essence 3-J asserts that the third-party complaint states a cause of action if considered with the underlying complaint. While 3-J has provided no citation of authority, there is case law which supports the argument that the underlying American complaint can be considered in determining the sufficiency of 3-J's third-party complaint. *Rome*, 81 Ill. App. 3d 776; *Bell Telephone Co. v. Dynaweld, Inc.* (1979), 70 Ill. App. 3d 387.

An agency relationship is a fiduciary one. (*Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 80.) An attorney, broker, auctioneer, and other persons similarly employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (*Protective Insurance Co. v. Coleman* (1986), 144 Ill. App. 3d 682.) An insurance broker's employment in each case is that of a special agent for a single objective. (*Penrod*, 68 Ill. App. 3d at 80.) Once the limited purpose of the broker's agency is accomplished, the broker no longer owes any on-going fiduciary duty to the ex-principal. (*Penrod*, 68 Ill. App. 3d at 80.) Whether the relationship has ceased is a question of fact; however, a complaint must still allege specific facts regarding the circumstances from which the existence of the relationship can be inferred in order to survive a motion to dismiss. See *H P I Health Care Services, Inc.*, 131 Ill. 2d at 163.

Based upon the allegations in the third-party complaint, 3-J and IBS had an agency relationship in the past on a per-customer basis limited to the procurement of insurance. 3-J alleged sufficient facts to show that IBS acted as its agent for the limited objective of procuring and renewing the GASLIC policy for American. However, no issue is before this court concerning any breaches of duty by IBS for these matters.

■ There were sufficient allegations to raise a factual question as to whether the agency relationship between 3-J and IBS began anew with respect to the Continental project. The allegations indicate that 3-J contacted and dealt with IBS for the limited purpose of securing coverage under endorsement No. 8 of the GASLIC policy. On August 29, 1986, 3-J first asked IBS if excess liability coverage for the pro-

ject could otherwise be obtained for American. However, there are no factual allegations that prior to August 29, 1986, 3-J requested IBS to quote and/or procure alternative coverage for American. By 3-J's own statement in paragraph No. 7 of the third-party complaint, IBS was to obtain timely replacement coverage upon 3-J's request. There are no factual allegations to show that IBS was required to procure replacement insurance at the time 3-J "engaged" IBS to obtain an extension of coverage from GASLIC under endorsement No. 8 of the GASLIC policy.

Since an agency relationship was sufficiently alleged with respect to the GASLIC policy, IBS owed 3-J fiduciary duties. (*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 630.) IBS was required to make known to 3-J all material facts within its knowledge which may affect the transaction and the subject matter of its agency. (*Protective Insurance*, 144 Ill. App. 3d at 694.) IBS owed a duty not to mislead 3-J. (See *Estergard*, 105 Ill. App. 3d 816.) Inherent in the obligation to seek coverage under the GASLIC policy was the duty to notify 3-J if GASLIC declined to insure the risk so that 3-J would not be lulled into a feeling of security or suffer prejudicial delay in seeking coverage elsewhere. See *Talbot v. County Life Insurance Co.* (1973), 8 Ill. App. 3d 1062.

There were no allegations of fact to indicate that IBS breached any duty with respect to obtaining coverage under the GASLIC policy for the Continental project. Indeed, 3-J does not argue that any breach occurred with respect to IBS' actions on the GASLIC coverage. Rather 3-J claims that IBS breached fiduciary duties in failing to procure replacement insurance for American. During oral argument 3-J further clarified that said breach occurred on August 29, 1986, when IBS told 3-J it did not know where alternative coverage could be obtained.

3-J makes certain statements in its initial brief and reply brief concerning various conclusions. However, the third-party complaint does not allege sufficient facts to support the conclusions, and, therefore, they are not considered in determining the sufficiency of the third-party complaint. These unsupported conclusions are: all 3-J's communications to and from GASLIC were through IBS; all approaches to all excess lines insurers were through IBS; 3-J was "forced" to use an excess lines broker, IBS; 3-J was totally reliant on IBS to access GASLIC and other excess insurance markets and locate coverage for American; and IBS was fully aware of the need to replace GASLIC if GASLIC refused coverage. The only statement in the third-party complaint is that 3-J did "not normally solicit such

quotations from such companies," and that IBS "holds itself out to be a broker who can procure such coverages." These statements do not support the conclusions reached by 3-J, nor can any reasonable inference be drawn from it to support 3-J's statements.

3-J fails to allege even in a conclusional fashion what breach of fiduciary duty occurred or when with respect to alternative coverage. 3-J concedes that paragraph No. 21 "somewhat misses the point." Paragraph No. 21 alleged that based upon information and belief IBS did not attempt to obtain alternative coverage thereafter (August 29, 1986). 3-J claims a reasonable inference can be drawn that IBS had attempted to find alternative coverage from IBS' statement to 3-J on August 29, 1986, that it did not know where such coverage could be obtained. 3-J also argues that reasonable inferences can be drawn from American's complaint wherein it was alleged that alternative coverage was available at a lower premium. These inferences are that IBS did not search the market prior to its response to 3-J or that it did, but withheld information.

Reasonable inferences may be drawn from properly pleaded facts. (*Board of Education,* 131 Ill. 2d 428.) The third-party complaint does not allege what, if anything, 3-J understood by IBS' answer. There are no factual allegations that IBS had been requested or was in any manner required to look for alternative coverage prior to 3-J's question to it. No reasonable inference can be drawn that IBS had looked for other coverage and found none.

Assuming that an inference could be drawn that IBS did not search the markets based on American's complaint, there are no factual allegations to indicate that this failure was a breach of duty. An inference may already be drawn that IBS did not look for replacement coverage based on its answer to 3-J. There are no facts alleged that show IBS was requested or required in any way to look and/or obtain replacement coverage. There are insufficient allegations to support an inference that IBS withheld information. There are no allegations that 3-J relied on IBS' statement as it argues in its reply brief. Nor were there any allegations to support 3-J's claim that it relied on IBS' response as a representation that IBS was so cognizant of the markets that searching was unnecessary.

Relying on American's complaint, 3-J claims a reasonable inference can be drawn that it was lulled into a sense of security and caused prejudicial delay by IBS' representation. 3-J claims it was nothing more than a conduit through which information passed between American and IBS.

Based on the third-party complaint, there are no allegations of further contact between 3-J and IBS after August 29, 1986. There are no facts alleged that would indicate that the information 3-J gave American after August 29, 1986, came from IBS. There are no allegations that 3-J relied on IBS' statement in order to be lulled into a sense of security.

A reading of American's complaint with 3-J's third-party complaint shows that although 3-J was aware on August 29, 1986, that GASLIC probably would not cover the project, 3-J failed to inform American of that fact. On September 3, 1986, 3-J told Continental that (GASLIC) approval was delayed but would be available by September 5, 1986. Assuming that 3-J understood IBS' August 29, 1986, statement to mean no alternative coverage was available as it contends, 3-J failed to tell American this information. Based on American's complaint 3-J told Continental Bank this information on September 5, 1986, seven days after IBS' answer to 3-J. American began looking for other coverage on September 5, 1986, and located other coverage within six days. These allegations do not support 3-J's claim that a reasonable inference can be drawn that it was lulled into a sense of security and caused prejudicial delay by IBS' representation. There are insufficient factual allegations to give rise to the inferences 3-J claims exist.

3-J has failed to allege sufficient factual allegations to state a cause of action against IBS. (*In re Beatty*, 118 Ill. 2d at 499.) It relies on inferences which are not supported by properly pleaded facts. (*Board of Education*, 131 Ill. 2d at 438.) It argues conclusions which are not supported by factual allegations. (*Adkins*, 129 Ill. 2d at 520.) The trial court did not abuse its discretion in dismissing the third-party complaint with prejudice. *Knox*, 88 Ill. 2d at 422.

3-J requests in its conclusion that this court remand for the purpose of allowing it to file a third amended third-party complaint if the second amended third-party complaint is not reinstated on appeal. IBS points out that 3-J has waived this request by failing to ask leave to amend before the trial court prior to its order. (See *Bell v. Yale Development Co.* (1981), 102 Ill. App. 3d 108.) 3-J replies by noting that the trial court's October 31, 1991, order contrasted with its earlier orders that 3-J could file amended pleadings. The fact the trial court allowed 3-J earlier opportunities to state a cause of action does not mean that 3-J would have endless attempts to state a cause of action. In any event, if the facts alleged do not state a cause of action, a complaint should be dismissed, and it is no answer that facts other than those alleged might be shown that would support an amended

complaint. *Loehr v. Illinois Bell Telephone Co.* (1974), 21 Ill. App. 3d 555.

The judgment of the circuit court is affirmed.

Affirmed.

INGLIS, J., concurs.

JUSTICE BOWMAN, dissenting:

The majority holds that 3-J failed to state a cause of action in that it did not adequately allege a breach of fiduciary duty by IBS. The linchpin of the majority opinion is that there are no factual allegations that, prior to August 29, 1986, 3-J requested IBS to "quote and/or procure alternative coverage for American." Contrary to the opinion of my colleagues, I believe the third-party complaint does set forth such allegations. Accordingly, I dissent.

3-J's third-party complaint, in summary, alleges the following: that prior to July 17, 1984, 3-J, on more than one occasion, engaged IBS as an insurance broker in obtaining price quotations from excess liability insurance companies for 3-J's customers; that 3-J does not normally solicit such quotations, and IBS holds itself out as a broker who can procure such coverage; if a policy issued to 3-J's customer based on IBS' service to 3-J, IBS and 3-J would share the commission paid by the issuing company; that IBS understood that it would use its best efforts to obtain quotes on the cost of requested coverage and that it would promptly notify 3-J if it could not obtain the customer's required coverage; that IBS would process transmittals from 3-J or the insured to the insurer and would obtain timely replacement coverage for 3-J's customers; that prior to July 17, 1985, IBS agreed to, and did at 3-J's request, procure excess liability coverage through GASLIC for 3-J's customer, E & E; that pursuant to the requirements of the GASLIC policy, 3-J requested IBS to inform GASLIC that E & E was bidding a demolition project for the Continental Bank; IBS requested from 3-J additional information on the Continental project bid and subsequently informed 3-J that GASLIC might not insure the Continental project or might insure only for an increased premium charge; 3-J asked IBS if the insurance coverage for the Continental project could be otherwise obtained for E & E; IBS stated to 3-J in response that IBS did not know where such coverage could be obtained; that on information and belief, IBS did not, as an insurance broker for 3-J, attempt to obtain excess liability coverage for the Continental project from any insurer other than GASLIC; and that IBS breached its oral contractual obligation to procure on a

timely basis the insurance coverage requested by E & E and, as 3-J's insurance broker, failed to exercise reasonable care, ordinary diligence and reasonable promptness in procuring such coverage. American's complaint against 3-J and the GASLIC insurance policy were attached as exhibits to the 3-J third-party complaint and incorporated thereby by reference. American's complaint states that E & E requested to obtain, within 15 days, $15 million excess liability insurance coverage as a bid requirement for the Continental project.

The majority opinion admits that sufficient allegations were pleaded to raise a factual question as to whether the agency between 3-J and IBS began anew with respect to the Continental project. Specifically, the opinion notes the allegations which indicate that 3-J contacted IBS for the purpose of securing coverage under endorsement No. 8 of the GASLIC policy. The majority then concludes that there are no factual allegations that prior to August 29, 1986, 3-J requested that IBS "quote and/or procure alternate coverage for American." To reach this result, the general business relationship history between 3-J and IBS and the specific history relating to the acquisition of American's policy with GASLIC, as established by the facts set forth in 3-J's third-party complaint, including the exhibits incorporated therein by reference, must be ignored. Specifically, the majority ignores the fact that 3-J asked IBS if excess liability coverage for the project could *otherwise* be obtained for American. Accepting this fact as true and drawing all reasonable inferences in favor of 3-J (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438), it follows that the scope of the agency relationship between 3-J and IBS reasonably includes the obligation of IBS to search the excess liability insurance market for coverage of the Continental project. Consequently, it cannot be said that no set of facts can be proved which will entitle 3-J to recover. (*Board of Education*, 131 Ill. 2d at 438.) An agent must see that he meets the responsibility of his position and does not take any advantage, either for his own personal gain or to injury of the person he represents. *Head v. Wood* (1959), 20 Ill. App. 2d 97, 106.

I submit that the allegations regarding the business history between 3-J and IBS, when coupled with the alleged specific inquiry as to whether insurance coverage for the Continental project was otherwise available, were sufficient to set forth the element of an agency relationship and a fiduciary duty on the part of IBS to timely search the market for such coverage.

For the reasons stated, I would reverse the trial court's judgment dismissing 3-J's third-party complaint.