**In re 203 NORTH LaSALLE STREET PARTNERSHIP, Debtor.**

**Bank of America, National Ass'n, Plaintiff,**

v.

**North LaSalle Street Limited Partnership, Defendant.**

**Bankruptcy No. 95–B–04998. Adversary No. 99–A–01168.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 10, 2000.

Thomas S. Kiriakos, Beverly J. Klein, Mayer, Brown & Platt, Chicago, IL, for Bank of America, N.A.

Kenneth N. Klee, Martin R. Barash, Klee Tuchin & Bogdanoff LLP, Los Angeles, CA, for North LaSalle Street Limited Partnership.

### MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

This adversary proceeding seeks a declaratory judgment as to the effect of subordination agreements on plan confirmation proceedings in a Chapter 11 case. The adversary is before the court on a motion for summary judgment, and there are two issues in dispute: (1) whether senior status under the subordination agreements should be accorded to an artificial deficiency claim created by § 1111(b) of the Bankruptcy Code (Title 11, U.S.C.), and (2) whether the senior creditor is enti-

tled to vote subordinated claims. For the reasons set out below, the court will enter judgment declaring that the subordination agreements are effective as to a deficiency claim arising under § 1111(b), but that the senior creditor is not entitled to vote the subordinated claims in Chapter 11 proceedings, despite a provision to that effect in the subordination agreements.

### Jurisdiction

Pursuant to 28 U.S.C. § 1334(a), federal district courts have exclusive jurisdiction over bankruptcy cases. However, pursuant to 28 U.S.C. § 157(a), the district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such reference of the pending case. When presiding over such a referred case, a bankruptcy judge has jurisdiction, pursuant to 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments as to core proceedings within the case. The matter before the court is a core proceeding since it concerns the administration of the estate (§ 157(b)(2)(A)), will determine the extent of a claim (§ 157(b)(2)(K)), and deals with the confirmation of a plan (§ 157(b)(2)(L)). Therefore, this court has jurisdiction to enter an order deciding the present motion and entering judgment in the adversary proceeding.

### Findings of Fact

The facts relevant to this case are undisputed. The debtor in this Chapter 11 case, 203 North LaSalle Street Partnership, owns fifteen floors of a commercial office building located in downtown Chicago. The debtor has two major secured creditors. One is the debtor's general partner, which has a similar name, but without the initial numerals—North LaSalle Street Limited Partnership ("North LaSalle"). The other is Bank of America, National Association, formerly Continental Bank ("the Bank").

In early 1987, the debtor obtained a loan from the Bank secured by a duly recorded first mortgage on the property. The loan was nonrecourse in nature, generally enforceable only against the Bank's collateral. The nonrecourse nature of the loan was emphasized by an agreement that the maker of the loan would be an Illinois land trustee, on behalf of the trust through which the debtor owned the property.

In September, 1988, the debtor obtained a second nonrecourse mortgage loan from North LaSalle. The terms of North LaSalle's mortgage explicitly provided that this mortgage was junior and subordinate to the mortgage of the Bank. At the time it entered into the loan agreement with the debtor, North LaSalle also entered into an Inter–Creditor Agreement with the Bank. The Inter–Creditor Agreement again provided that North LaSalle's loan was subordinate to the Bank's loan. Specifically, the Inter–Creditor Agreement provided:

> North LaSalle covenants and agrees that the North LaSalle Loan and the North LaSalle Loan Documents, as they may be, at any time from time to time, amended, modified, supplemented, substituted, replaced or restated, are and shall at all times be and remain junior and subordinate to the [Bank] Transactions. . . .

In October 1992, North LaSalle also entered into a "Consent and Subordination Agreement" in consideration for the Bank's waiving certain rights under its original loan documents. This agreement contained a broad subordination provision, including an agreement that the Bank could vote North LaSalle's claim in any bankruptcy reorganization:

> [North LaSalle] further agrees that in the event of any dissolution, winding up, liquidation, readjustment, reorganization or other similar proceeding relating to . . . the [debtor] or to its creditors, . . . whether in bankruptcy, insolvency or receivership . . ., the liabilities of the Trust or the [debtor] under the Bank's Loan Papers (the "Senior Liabilities") . . . shall first be paid in full before [North

LaSalle] shall be entitled to receive and to retain any payment or distribution in respect of the liabilities of the Trust or [the debtor] under the Second Mortgage Loan Papers the ("Junior Liabilities"), and, in order to implement the foregoing, (a) all payments and distributions of any kind or character in respect of the Junior Liabilities to which [North LaSalle] would be entitled if the Junior Liabilities were not subordinated ... shall be made directly to the Bank ... and (c) [North LaSalle] hereby irrevocably agrees that the Bank may, at its sole discretion, in the name of [North LaSalle] or otherwise, demand, sue for, collect, receive and receipt for any and all such payments or distributions and file, prove, and vote or consent in any such proceedings with respect to, any and all claims of [North LaSalle] relating to the Junior Liabilities.

The Bank's loan to the debtor matured on January 3, 1995. The debtor was unable to pay the Bank's loan at that time and subsequently, on March 13, 1995, the debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. At that time, the debtor owed the Bank over $93 million in outstanding principal and accrued interest under the Bank's loan documents. The principal balance on North LaSalle's Second Mortgage at the petition date was $11.3 million.

In December of 1995, the court confirmed a Chapter 11 plan proposed by the debtor, over the Bank's objection. The Bank then appealed the confirmation order, eventually to the Supreme Court of the United States. The Supreme Court reversed the order and the case was remanded to this court for further proceedings. *Bank of America Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999). Following the remand of the debtor's case, this court issued an order on September 15, 1999 designed, insofar as possible, to place the parties in the positions that they occupied prior to confirmation. The order also terminated the debtor's exclusive right to propose a plan. Thereafter, the Bank and the debtor indicated an intent to present competing plans.

The present dispute involves the rights of the Bank and North LaSalle under the Bankruptcy Code and the parties' subordination agreements. The Bank has filed an adversary complaint seeking a declaration both (1) that its entire claim—including any portion of the claim in excess of the value of its interest in the debtor's property—is entitled to payment before any payment from the debtor to North LaSalle, and (2) that the Bank is entitled to vote the claim of North LaSalle in the anticipated confirmation proceedings. In response, North LaSalle has acknowledged that the Bank holds a superior claim as to any amounts received from the proceeds of the Debtor's property. However, North LaSalle asserts that any deficiency claim of the Bank should be paid pro rata with North LaSalle's claim, and North LaSalle contends that it has the right to vote its own claim in the confirmation proceedings.

The Bank has moved for summary judgment, and the court took the matter under advisement to consider the arguments of the parties.

### Conclusions of Law

The declaratory judgment sought in this pending adversary proceeding is an appropriate method for determining the rights of the parties, and is specifically authorized by Fed.R.Bankr.P. 7001(9). Given the undisputed facts set forth above, the declaration of rights that is sought in the complaint can be issued summarily, pursuant to Fed.R.Bankr.P. 7056 (incorporating the standards for summary judgment set out in Fed.R.Civ.P. 56). *See In re Sonicraft, Inc.*, 238 B.R. 409, 412–13 (Bankr. N.D.Ill.1999) (discussing summary judgment standards).

With the admission by North LaSalle that its mortgage is subordinate to the secured claim of the Bank, there are two

issues for the court to determine: (1) whether any unsecured deficiency claim held by the Bank is entitled to senior status, and (2) whether the Bank is entitled to vote North LaSalle's subordinated claim in the anticipated confirmation proceedings.

■ *The deficiency claim.* Section 510(a) of the Bankruptcy Code provides that a subordination agreement is enforceable in bankruptcy "to the same extent that such agreement is enforceable under applicable nonbankruptcy law." In this case, as the parties acknowledge, the applicable nonbankruptcy law is the law of Illinois, and the subordination agreements between North LaSalle and the Bank must be enforced as they would be under Illinois law. As with other contracts, Illinois law provides that, in the absence of ambiguity, the terms of subordination agreements are to be construed according to their plain language. *Marriott Family Restaurants, Inc. v. Lunan Family Restaurants (In re Lunan)*, 194 B.R. 429, 445 (Bankr.N.D.Ill. 1996). Only if an ambiguity exists should the court consider evidence outside of the agreement. *Greenfield Direct Response, Inc. v. ADCO List Management (In re Greenfield Direct Response, Inc.)*, 171 B.R. 848, 855–56 (Bankr.N.D.Ill.1994).

■ The language of the agreements in this case is not ambiguous. North LaSalle's Promissory Note, the Inter–Creditor Agreement, and the Consent and Subordination Agreement each seek, in broad language, to subordinate all rights of North LaSalle under its note and mortgage to the rights of the Bank under its prior note and mortgage. The Consent and Subordination Agreement is particularly clear in this regard, stating that "the liabilities of the Trust or [the debtor] under the Bank's Loan Papers ... shall first be paid in full before [North LaSalle] shall be entitled to receive and to retain any payment or distribution."

North LaSalle argues first that the liabilities under the Bank's loan do not include payment of a deficiency claim, because the loan is nonrecourse, and only gives rise to a claim in bankruptcy because of the operation of § 1111(b) of the Code. This argument is mistaken. The "liabilities" under the loan agreement with the Bank include the full amount of principal and interest under the promissory note, made by the land trustee on behalf of the debtor's trust. The fact that the Bank's loan is nonrecourse does not change the reality that the land trust, at least, had a liability under the promissory note to repay the entire principal and interest specified by the note. The nonrecourse features of the loan simply impose a limitation on collection actions—with the Bank generally agreeing, in the absence of fraud, to restrict its recovery on the liability of the debtor and its land trust to the property that secures the loan. This restriction on enforcement would likely have resulted in the Bank being unable, outside of bankruptcy, to obtain any recovery beyond the value of its collateral. However, even if the liability of the trust and the debtor for the Bank's loan was not able to serve as the basis for recovery, it still existed— there was liability under the note for the full amount of the principal and interest, and the full amount of that liability was given senior status by the subordination agreements that North LaSalle executed.

North LaSalle makes an additional argument—that even if the subordination agreements grant senior status to a deficiency claim, the agreements should not be enforced in this regard, because the application of the agreements to a deficiency claim is not explicit. In this connection, North LaSalle cites authority for the proposition that a "Rule of Explicitness" should be applied to subordination agreements in bankruptcy. *See, e.g., In re Ionosphere Clubs, Inc.*, 134 B.R. 528, 533–34 (Bankr. S.D.N.Y.1991).

■ The subordination agreements involved in this case in fact contain no explicit provision according senior status to a claim arising from an insufficiency of the

Bank's collateral—such a deficiency claim is simply part of the general class of "liabilities" arising under the Bank's loan as to which senior status is accorded. Thus, the subordination of North LaSalle's loan claims to a deficiency claim of the Bank is provided for expressly (in general language), but not explicitly. However, there is no requirement under the Bankruptcy Code that any special degree of explicitness is required to accord senior status to a deficiency claim.

The Rule of Explicitness to which North LaSalle refers was developed to deal with a particular problem arising from subordination agreements in bankruptcy—the question of whether a subordination agreement could require interest on an unsecured senior claim, accruing after the filing of a bankruptcy case, to be paid before payment of the subordinated debt. This problem is described in *Chemical Bank v. First Trust of New York (In re Southeast Banking Corp.)*, 156 F.3d 1114, 1118–20 (1998), and can be summarized as follows:

• Under the Bankruptcy Act of 1898, there was no statutory treatment of subordination agreements, and the courts enforced these agreements according to equitable principles.

• One of the general principles of bankruptcy law is that interest on unsecured claims stops at the time of the filing of a bankruptcy case.

• A senior creditor under a subordination agreement could argue that its claim was entitled to postpetition interest, despite the general prohibition, with the payment of interest coming not from the estate, but from the dividend that would otherwise be paid to the subordinated claim. The idea was that the senior claim was to be paid "in full" before the subordinated claim was paid, and that full payment required postpetition interest.

• The Third Circuit, faced with such an assertion by a senior creditor, ruled that in order for the parties to a subordination agreement to change the general

bankruptcy rule ("that interest stops on the date of the filing of the petition"), their agreement would have to "clearly show that the general rule ... is to be suspended, at least vis-a-vis these parties." *In re Time Sales Fin. Corp.*, 491 F.2d 841, 844 (3d Cir.1974). This requirement, operant only in the context of postpetition interest, became known as the Rule of Explicitness.

■ With this understanding, it is plain that the Rule of Explicitness has no application in the present case. Allowing payment of postpetition interest violated a general bankruptcy principle, and the courts held that in order to have this anomalous effect, a subordination agreement would have to be explicit in deviating from the usual rule. Payment of an unsecured deficiency claim, on the other hand, violates no policy of bankruptcy law, and hence there is no reason why an explicit provision should be required to obtain its enforcement in a subordination agreement. Indeed, as noted above, § 510(a) now indicates that subordination agreements must be enforced in bankruptcy just as they would be under applicable nonbankruptcy law, and hence it is doubtful whether the Rule of Explicitness continues to be viable even as to postpetition interest. (The *Southeast Banking* case, 156 F.3d at 1120–24, held that § 510 obviates any bankruptcy-based requirement of explicitness, and that any remaining need for special explicitness depends on applicable state law.) Pursuant to § 510(c), it is certain that a subordination provision that violates no principle of bankruptcy law—such as the present one—must be enforced as it would be under nonbankruptcy law. Since the subordination agreement here would accord senior status to the unsecured deficiency claim of the Bank under Illinois law, it enjoys the same status in this bankruptcy case.

■ *The right to vote a subordinated claim.* While the language of the subordination agreements governs the outcome of the Bank's right to repayment of any deficiency claim, the language of the Bank-

ruptcy Code governs the determination of voting rights in this case. Section 1126(a) of the Code provides that "[t]he holder of a claim" may vote to accept or reject a plan under Chapter 11, and the parties acknowledge that North LaSalle is the holder of the claim arising under its loan. Unless there is some basis for deviating from the plain language of § 1126(a), North LaSalle should therefore be allowed to vote its claim in the confirmation process. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 ("The plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (citation omitted). None of the arguments given by the Bank justifies any deviation from the plain language of § 1126(a).

■ First, the fact that North LaSalle agreed that the Bank could vote its claim as part of a subordination agreement does not provide a basis for disregarding § 1126(a). It is generally understood that prebankruptcy agreements do not override contrary provisions of the Bankruptcy Code. Thus, in *Klingman v. Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir.1987), the court noted that the Bankruptcy Code generally provides for the discharge of an individual's debts, and that it would be contrary to public policy to allow a debtor "to contract away the right to a discharge." *See also Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 652 n. 7 (9th Cir. BAP 1998) (collecting decisions refusing to enforce prepetition waivers of "bankruptcy benefits" other than discharge). Indeed, since bankruptcy is designed to produce a system of reorganization and distribution different from what would obtain under nonbankruptcy law, it would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply.

■ Second, § 510(a), in directing enforcement of subordination agreements, does not allow for waiver of voting rights under § 1126(a). "Subordination," though not defined by the Code, has a common understanding in the law, reflected in Black's Law Dictionary, which defines subordination as: "The act or process by which a person's rights or claims are ranked below those of others." Joseph R. Nolan and Jacqueline M. Nolan–Haley, *Black's Law Dictionary* 1426 (6th ed.1990). Subordination thus affects the order of priority of payment of claims in bankruptcy, but not the transfer of voting rights. One of the decisions cited by North LaSalle, *Beatrice Foods Co. v. Hart Ski Mfg. Co. (In re Hart Ski Mfg. Co.)*, 5 B.R. 734, 736 (Bankr.D.Minn.1980), made this point emphatically in the course of deciding that a subordinated creditor was entitled to adequate protection of its claim:

> The intent of § 510(a) ... is to allow the consensual and contractual priority of payment to be maintained between creditors among themselves in a bankruptcy proceedings. There is no indication that Congress intended to allow creditors to alter, by a subordination agreement, the bankruptcy laws unrelated to distribution of assets.

*Hart Ski* went on to address the very issue involved here, stating in dicta that the Code "guarantees each secured creditor certain rights, regardless of subordination ... includ[ing] the right ... to participate in the voting for confirmation or rejection of any plan of reorganization."

Third, Fed.R.Bankr.P. 3018(c) does not allow the voting of a subordinated creditor's claim by the senior creditor. The rule provides that an acceptance or rejection of a Chapter 11 plan must be signed by "the creditor or equity security holder or an authorized agent." Of course, a bankruptcy rule may not be enforced so as to contradict provisions of the Code. *U.S. v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089 (6th Cir.1990). However, there is no conflict here. An "agent" is commonly understood to act at the direction of a principal. Indeed, in *Brunswick Leasing*

*Corp. v. Wisconsin Central Ltd.,* 136 F.3d 521, 526 (7th Cir.1998), the court stated that "[t]he test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent" (quoting *Wargel v. First Nat'l Bank of Harrisburg,* 121 Ill.App.3d 730, 736, 77 Ill.Dec. 275, 460 N.E.2d 331, 334 (1984)). The Bank in this case would not be acting at the direction of North LaSalle in voting its claim; it would be acting in its own interests, quite possibly contrary to those of North LaSalle. Accordingly, the Bank cannot be seen as the agent of North LaSalle under Rule 3018.

Finally, far from producing any results at odds with the intent of Congress, the plain language of § 1126(a) is completely consistent with reasonable bankruptcy policy. Although a creditor's claim is subordinated, it may very well have a substantial interest in the manner in which its claim is treated. Subordination affects only the priority of payment, not the right to payment. If the assets in a given estate are sufficient, a subordinated claim certainly has the potential for receiving a distribution, and Congress may well have determined to protect that potential by allowing the subordinated claim to be voted. This result assures that the holder of a subordinated claim has a potential role in the negotiation and confirmation of a plan, a role that would be eliminated by enforcing contractual transfers of Chapter 11 voting rights.

## Conclusion

For the reasons discussed above, the court will enter judgment, in a separate order, declaring (1) that North LaSalle's claim in this case is subordinate to the Bank's entire claim, including any deficiency claim, and (2) that North LaSalle, as holder of the claim arising under its loan to the debtor, is entitled to vote that claim in this Chapter 11 case.